UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-14418-Middlebrooks/McCabe

BARBARA HARTZ,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** comes before the Court by Order of Reference from United States District Judge Donald M. Middlebrooks (DE 33) for a Report and Recommendation on the parties' cross-motions for summary judgment (DE 28, DE 31).  The cross-motions present four issues for review:

- Whether the Administrative Law Judge ("ALJ") erred by failing to include mental limitations in the residual functional capacity ("RFC"), resulting in errors at steps four and five of the five-step process.

- Whether the Appeals Council erred by refusing to consider post-hearing evidence offered by Dr. Amanda Ragonesi.

- Whether the ALJ erred in assessing Plaintiff's credibility, specifically, by failing to consider Plaintiff's stellar work history.

- Whether this case must be reversed based on the separation-of-powers doctrine.

Plaintiff has timely pursued and exhausted her administrative remedies, and the Commissioner's decision is ripe for judicial review pursuant to 42 U.S.C. § 405(g).  After careful consideration of the administrative record and the parties' briefs, the undersigned **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

## I.      Procedural History

On July 26, 2016, Plaintiff filed an application for disability benefits, with an alleged disability onset date of April 30, 2016 (R. 45).[1]  After the application was denied at the lower levels, Plaintiff requested an administrative hearing, which took place on March 13, 2019 (R. 67-100).  Following the hearing, the ALJ issued an unfavorable decision on April 30, 2019 (R. 45, 169-81).  Thereafter, the SSA Appeals Council remanded the case, ordering the ALJ to obtain and consider additional evidence concerning Plaintiff's depression and post-traumatic stress disorder (R. 190).

On remand, the ALJ held another hearing on September 14, 2020 (R. 101-32).  Following this second hearing, the ALJ issued an unfavorable decision on October 13, 2020 (R. 45-60).  The ALJ's decision followed the five-step process set forth in 20 C.F.R. §§ 404.1520(a)(4)(i-v) and 416.920(a)(4)(i-v).  *See Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 852 (11th Cir. 2018) (explaining how the ALJ engages in the five-step process).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 30, 2016, the alleged onset date of disability (R. 48).  At step two, the ALJ determined that Plaintiff had the following severe impairments:  obesity, facet arthropathy of the spine at T12, and L1 through L4, degenerative disc disease of the cervical spine with neuroformaminal narrowing, polyneuropathy, and osteoarthritis of the knees (R. 48).  The ALJ also determined that Plaintiff had the following nonsevere impairments:  diabetes, obstructive sleep apnea, diabetic neuropathy, migraines, TMJ, anxiety, and depression (R. 48-49).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

---

[1] The record on appeal may be found at docket entry 10.

1 (R. 50).  Next, the ALJ found that Plaintiff had a RFC to perform sedentary work as defined in

20 C.F.R. 404.1567(a), except Plaintiff can occasionally climb ramps and stairs; never climb ropes,

ladders, or scaffolds; occasionally stoop, crouch, and kneel, but never crawl; occasionally reach

overhead bilaterally; no more than occasional exposure to extreme heat, vibration; and no contact

with hazards, such as workplace machinery and high unprotected heights (R. 51).

At step four, the ALJ determined that Plaintiff can still perform past relevant work as an

insurance underwriter (R. 58).  In addition, at step five, the ALJ found that other jobs exist in

significant numbers in the national economy that Plaintiff can still perform, considering her age,

education, work experience, and RFC (R. 59-60).  Specifically, the ALJ found Plaintiff can still

perform the duties of insurance benefits clerk, insurance clerk financial, and clerical (R. 59-60).

As a result, the ALJ found Plaintiff not disabled (R. 45-60).

Following the ALJ's decision, on November 19, 2020, Plaintiff sought review from the

SSA Appeals Council (R. 2).  In support of her request, Plaintiff submitted a psychological

evaluation dated November 3, 2020, and a medical source statement dated November 11, 2020,

both prepared by Dr. Amanda Ragonesi (R. 20-24, 35-41).  On March 25, 2021, the Appeals

Council denied review, stating:

> You submitted a psychological evaluation dated November 3, 2020 (7 pages) and
> a medical source statement dated November 11, 2020 (5 pages), both from Amanda
> Ragonesi, Psy. D.  You also submitted additional treatment records from Kaiser
> Permanente dated November 9, 2020 through December 31, 2020 (17 pages).  The
> Administrative Law Judge decided your case through October 13, 2020.  This
> additional evidence does not relate to the period at issue.  Therefore, it does not
> affect the decision about whether you were disabled beginning on or before October
> 13, 2020.

(R. 2).

This appeal followed pursuant to 42 U.S.C. § 405(g).

## II.     Standard of Review

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (cleaned up).  A reviewing court must regard the Commissioner's findings of fact as conclusive so long as they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  "Substantial evidence is … more than a scintilla … and it must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion."  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

A reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (cleaned up).  So long as substantial evidence supports the Commissioner's decision, and the Commissioner followed proper legal standards, this Court must affirm, even if the Court would have reached a contrary result as finder of fact, and even if the Court finds that the evidence preponderates against the Commissioner's decision.  *See Winschel*, 631 F.3d at 1178.

## III.     Discussion

Plaintiff argues this case should be reversed for four reasons, each of which the Court will address in turn.

### A.     Failure to Include Mental Limitations in the RFC

Plaintiff first challenges the ALJ's formulation of the RFC, which represents the most a claimant can still do despite his or her limitations.  *See* 20 C.F.R. § 404.1545(a)(1).  Plaintiff argues the ALJ erred by failing to include mental limitations in the RFC (DE 28-2 at 5).  Plaintiff argues this error caused additional downstream errors at steps four and five of the five-step sequential

process.  As set forth below, the Court disagrees and finds the RFC was supported by substantial evidence and was based on proper legal standards.  Plaintiff raises several arguments to the contrary, each of which the Court will address in turn.

### 1.    Inconsistency Between Step Two Findings and RFC Findings

Plaintiff first points out that the ALJ found, at step two of the sequential evaluation, that Plaintiff had "mild" limitations in (1) the ability to understand, remember or apply information, (2) the ability to interact with others, (3) the ability to concentrate, persist or maintain pace, and (4) the ability to adapt and manage oneself (R. 49-50).  Plaintiff argues that, based on these findings, she had "at least some mental limitations," and the ALJ erred by failing to incorporate these limitations into the RFC (DE 28-2 at 5).  As set forth below, the Court disagrees.

Where a claimant has a "colorable claim of mental impairment," the ALJ must complete the Psychiatric Review Technique Form, often referred to as the "PRTF" or the "special technique."  *See Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005).  In completing the PRTF, the ALJ must evaluate how a claimant's mental impairment impacts four broad functional areas (sometimes referred to as the "paragraph B criteria"):  (1) the ability to understand, remember, or apply information; (2) the ability to interact with others; (3) the ability to concentrate, persist, or maintain pace; (4) and the ability to adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).  The ALJ must rate the degree of limitation in each of these areas as either "none," "mild," "moderate," "marked," or "extreme."  20 C.F.R. § 404.1520a(c)(4).  If the ALJ finds the degree of limitation in each of these functional areas to be "none" or "mild," the ALJ will generally conclude the mental impairment is not severe and causes no more than a minimal limitation in the claimant's ability to do basic work activities.  20 C.F.R. § 404.1520a(d)(1).

The ALJ uses the PRFT and the paragraph B criteria to rate the severity of mental impairments at step two of the sequential process. *See* 20 C.F.R. § 404.1520a. These factors do not necessarily dictate the outcome of the RFC, however, as the RFC determination "requires a more detailed assessment." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019). ALJs are not obligated to include mental limitations in the RFC merely because they have found "mild" limitations under the PRFT and paragraph B criteria. *See Chestang v. Comm'r of Soc. Sec.*, No. 8:21-CV-482-MRM, 2022 WL 4354849, at *8 (M.D. Fla. Sept. 20, 2022) (collecting cases); *Mendez v. Saul*, No. 7:19-CV-291, 2021 WL 1217376, at *11 (S.D. Tex. Jan. 6, 2021) (noting that paragraph B findings need not be incorporated into the RFC and that claimant's argument to the contrary "misconstrues the relationship between the ALJ's step [two and] three findings and the RFC determination").

In this case, at step two of the sequential process, the ALJ found Plaintiff's mental impairments of depression and anxiety to be nonsevere (R. 49). In reaching this decision, the ALJ applied the PRFT and found that Plaintiff had "mild" limitations in all four areas of mental functioning under the paragraph B criteria (R. 49-50). Because Plaintiff's mental impairments caused no more than "mild" limitations in any of the paragraph B functional areas, and because the evidence did not otherwise indicate more than a minimal limitation in Plaintiff's ability to do basic work activities, the ALJ concluded that Plaintiff's mental impairments were "nonsevere" (R. 50). The ALJ's written decision expressly noted, however, that the paragraph B findings did not equate to a mental limitation for purposes of the RFC, stating:

> The limitations identified in the "paragraph B" criteria *are not a residual functional capacity assessment* but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment.

(R. 50) (emphasis added).

Contrary to Plaintiff's arguments, therefore, the ALJ's paragraph B findings at step two did not mandate that the ALJ incorporate mental limitations into the RFC. *See, e.g.*, *Bryant v. Comm'r of Soc. Sec.*, No. 2:20-cv-294-JLB-NPM, 2021 WL 4067464, at *11 (M.D. Fla. July 29, 2021) ("[T]he ALJ found mild limitations in all four functional areas[but] did not err in failing to include [mental] limitations in the RFC related to [plaintiff's] depression, anxiety, bipolar disorder, or insomnia."), *R. & R. adopted*, 2021 WL 3855941 (M.D. Fla. Aug. 30, 2021); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC."), *R. & R. adopted*, 2021 WL 1138179 (M.D. Fla. Mar. 25, 2021); *Bianco v. Comm'r of Soc. Sec.*, No. 2:18-cv-570-FtM-NPM, 2019 WL 4727812, at *7 (M.D. Fla. Sept. 27, 2019) (finding that ALJ's RFC determination, which included no mental limitations, was supported by substantial evidence despite ALJ's findings of "mild" limitations under in the paragraph B criteria).

The key issue here is not whether the ALJ had to incorporate the step two findings into the RFC, but whether the RFC finding itself was supported by substantial evidence, based on proper legal standards applicable to the RFC. As set forth below, the Court finds no error on that front.

## 2.      Substantial Evidence Supported the RFC

The Court has reviewed the record and finds the RFC to be supported by substantial evidence and based on proper legal standards. As stated, the RFC represents the most a claimant can still do despite his or her limitations. *See* 20 C.F.R. § 404.1545(a)(1). In making the RFC determination, the ALJ must consider all of the record evidence, including evidence of severe and nonsevere impairments. *See Griffin v. Comm'r of Soc. Sec.*, 560 F. App'x 837, 842 (11th Cir.

2014) ("[B]eyond the second step, the ALJ must consider the entirety of the Plaintiff's limitations, regardless of whether they are individually disabling."); *see also* S.S.R. 96-8P, 1996 WL 374184, at *5 (July 2, 1996) (stating that an ALJ must consider all limitations and restrictions imposed by an individual's impairments, even those that are not severe, and the RFC must be based on, among other things, medical history and findings, reports of daily activities, lay evidence, and recorded observations).

Here, the ALJ received conflicting evidence regarding the degree to which Plaintiff's nonsevere mental impairments affected her ability to work. The following evidence, however, supported the ALJ's decision to exclude mental limitations from the RFC:

- Plaintiff's 2019 IQ testing results showed a high average full scale IQ of 111, a high average verbal comprehension index, working memory index, processing speed, and average perceptual reasoning index (R. 892).

- The Wechsler Memory Scale reported Plaintiff's working memory as high average to very superior in all areas (R. 893). It also reported her abilities to encode, consolidate, and retrieve verbal and visual information as exceptional (R. 57, 896). She exhibited strong executive functioning skills, without deficits in cognitive skills such as impulse inhibition, sustained attention, planning, or sequencing (R. 896).

- Plaintiff reported social engagement throughout the week, including participation in a bowling league, Bible Study, and exercise classes at the local community gym (R. 742, 890).

- Plaintiff testified that she drives (R. 119), volunteers for several organizations once a month (R. 107), attends church weekly, participates in a weekly prayer group, walks the dog around the block, and organizes a ladies' brunch once a month (R. 123).

- On exam, Plaintiff appeared generally alert and oriented (R. 581-593, 641, 684-93), calm (R. 575), euthymic (R. 581), appropriate (R. 581-93), or had a normal mood and affect (R. 603). Plaintiff responded as friendly, pleasant, and cooperative (R. 580, 581-93, 665, 697, 784). The record reflected she had adequate concentration and attention (R. 641). She often appeared relaxed during therapy sessions and consistently engaged (R. 739, 741, 743, 745, 747, 749, 751, 755, 757, 759, 761, 763, 765, 767, 769, 771, 773, 775, 777, 779).

8

To be sure, Plaintiff has pointed the Court to a variety of record evidence that the ALJ might have used to reach a different conclusion as to the RFC.  On review, however, this Court cannot reweigh conflicting evidence or substitute its judgment for that of the ALJ.  *Mitchell*, 771 F.3d at 782.  The mere fact that some of the evidence conflicted with the ALJ's conclusion does not serve as a basis for remand.  *See Moore*, 405 F.3d at 1213 ("To the extent that [Plaintiff] points to other evidence which would undermine the ALJ's RFC determination, [Plaintiff's] contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from re-weighing the evidence or substituting our judgment for that of the Commissioner even if the evidence preponderates against the decision.") (cleaned up).

In particular, Plaintiff points the Court to a 2019 medical source statement authored by Dr. Amanda Ragonesi, who opined that Plaintiff had "marked loss" in the ability to, inter alia, carry out detailed instructions, maintain attention and concentration, deal with stress, work in coordination with others, complete normal workday activities, and accept instructions and criticism appropriately from supervisors (R. 901-02).  The ALJ gave "little weight" to Dr. Ragonesi's opinion, noting conflicts with Dr. Ragonesi's own examination and other portions of the record, including:

- Dr. Ragonesi found "moderate" paragraph B limitations yet also found "marked" limitations in certain subcategories, an internal inconsistency that, in the ALJ's view, weakened the overall reliability of the opinion (R. 57).

- Dr. Ragonesi's opinion also conflicted with other portions of the record, including Plaintiff's "high-average to very superior mental functioning on objective exams," her "alertness and orientation," her "adequate attention and concentration," her "ability to drive and organize brunches which require sustained attention and memory," her "ability to regularly attend church and weekly prayer meetings," to "volunteer with children's programs and meal programs," to "go bowling in a bowling league and attend exercise classes at a community gym" (R. 57-58).

9

Based on these facts, the Court finds no error in the ALJ's decision to discount Dr. Ragonesi's opinion.

Plaintiff also challenges many of the ALJ's citations to the record evidence, arguing that the ALJ misstated or mischaracterized the evidence (DE 28-2 at 11).  The Court has reviewed Plaintiff's arguments and finds that the ALJ did not misstate or mischaracterize the evidence.  As Plaintiff correctly points out, many of the record pages cited by the ALJ contained more than one conclusion (DE 28-2 at 12-13), including conclusions that the ALJ might have used to reach a different outcome.  At this stage of the case, however, the role of this Court is not to parse through this evidence, reweigh it, and decide which conclusions the ALJ should have favored.  *See Phillips*, 357 F.3d at 1240 n.8.  Instead, the role of this Court is merely to determine whether the ALJ followed proper legal standards and reached conclusion supported by substantial evidence.  *See Winschel*, 631 F.3d at 1178.  Applying that standard, the Court finds no error.

### B.      Appeals Council Determination

Plaintiff next argues the SSA Appeals Council committed error by denying her request for review based on newly submitted evidence (DE 28-2 at 15-17).  Generally, a claimant may present evidence at each stage of the SSA administrative process, including the Appeals Council.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. §§ 404.900(b), 416.1400(b).  When a claimant presents new evidence post-hearing, the Appeals Council must consider the new evidence, provided it is "material" and "chronologically relevant."  20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015).  Evidence is "material" if a reasonable possibility exists that the evidence would change the outcome.  *Washington*, 806 F.3d at 1321.  Evidence is chronologically relevant if it

"relates to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. §
404.970(a)(5), 416.1470(a)(5).

In this case, Plaintiff submitted new evidence from Dr. Ragonesi in the form of an updated
psychological evaluation dated November 3, 2020, and a medical source statement dated
November 11, 2020 (R. 20-24, 35-41).  The Appeals Council denied review on March 25, 2021,
finding that the new evidence did "not relate to the period at issue" and therefore did not "affect
the decision about whether you were disabled beginning on or before October 13, 2020" (R. 2).

The Court finds no error in the Appeals Council's decision for two reasons.  First, the new
evidence was not "chronologically relevant" because it did not relate "to the period on or before
the date of the [ALJ's] hearing decision."  20 C.F.R. § 404.970(a)(5).  Indeed, the new evidence
relied on an evaluation that Dr. Ragonesi conducted on November 3, 2020 – after the ALJ's
decision (R. 20, 60).  Because the evidence was not chronologically relevant, the Appeals Council
properly declined to consider it.  *See, e.g.*, *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999)
(affirming decision where SSA appeals council declined to consider new evidence in the form of
a physician statement that post-dated the ALJ hearing).

Second, the new evidence was not "material" because it did not give rise to a "reasonable
possibility" of changing the outcome.  Indeed, the new evidence consisted largely of an assessment
that Plaintiff's then-current condition had not changed considerably since Dr. Ragonesi's last
assessment in 2019 (which the ALJ had already considered):

> [Claimant's] presentation *has not changed considerably* since she was last
> evaluated by this examiner in 2019.  She described a long-standing history of
> difficulties with mood management, dating back to childhood.  Her history is also
> positive for multiple adverse childhood experiences.  She said she prefers not to
> think about or talk about the abuse she experienced as a child.  She also *continues
> to experience* emotional distress and physical reactivity when discussing those
> topics.  *Ongoing* struggles with avoidance, autonomic arousal, intrusive memories,
> alterations in mood, sleep difficulties, appetite disturbance, and distractibility were

endorsed.  Her self-report is also consistent with information provided in treatment records reviewed, *as well as previous* and current evaluation results.  While she reported improvements in her struggles with affective instability through consistent participation in therapy, *she continues to meet* diagnostic criteria for Major Depressive Disorder and Posttraumatic Stress Disorder.

(R. 24) (emphasis added).

Given that the ALJ assigned little weight to Dr. Ragonesi's earlier opinion, and that the new evidence largely restated conclusions from the earlier opinion, Plaintiff has not shown a "reasonable possibility" that the new opinion would change the outcome of the case.  For this reason as well, the Court finds no error in the Appeals Council's decision to deny review.

### C.    Credibility Finding

Plaintiff next argues the ALJ erred in assessing her credibility when formulating the RFC.  Specifically, Plaintiff argues the ALJ failed to consider her exemplary work history when assessing the credibility of her testimony concerning the intensity, persistence and limiting effects of her symptoms (DE 28-2 at 17-18).  Had the ALJ considered this work history, Plaintiff argues, the ALJ would have made a different credibility determination and would have formulated a different RFC.

The Court finds no error.  When claimants attempt to prove disability based on their subjective symptoms, they must first show "evidence of an underlying medical condition" and either (1) "objective medical evidence that confirms the severity of the alleged pain or symptoms arising from that condition," or (2) evidence that the "objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain [or symptoms]."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (internal citation omitted); *see also* 20 C.F.R. § 404.1529.  When a claimant establishes an impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on the claimant's ability to work.  20 C.F.R. § 404.1529(c)(1).  The ALJ

must consider all evidence presented, including evidence regarding a claimant's "prior work record." *See* 20 C.F.R. § 404.1529(c)(3).

"If the ALJ decides not to credit a claimant's testimony about her symptoms, the ALJ must articulate explicit and adequate reasons for doing so." *McMahon v. Comm'r of Soc. Sec. Admin.*, 583 F. App'x 886, 893 (11th Cir. 2014). In doing so, the ALJ need not summarize the entire record or "cite particular phrases or formulations." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," provided the ALJ's decision is sufficient to enable the reviewing court to conclude that the ALJ properly considered the claimant's medical condition as a whole. *Id.* at 1211. So long as the ALJ provides a clearly articulated credibility finding supported by substantial evidence, the finding will not be disturbed on appeal. *Foote*, 67 F.3d at 1562.

The Court finds the ALJ followed proper legal standards here and articulated a credibility finding supported by substantial evidence in this case. To begin, the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms" (R. 52). As required by the regulations, the ALJ then turned to Plaintiff's subjective complaints and found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (R. 52). The ALJ's written decision discussed the record evidence at length, including evidence relating to Plaintiff's daily activities, her medical examinations, and other factors concerning her functional limitations (R. 52-55).

Although the ALJ's written decision did not expressly discuss Plaintiff's work history, the ALJ was fully aware of the facts and circumstances surrounding Plaintiff's past work. Indeed, during the ALJ's discussions with the VE, the VE twice used the word "stellar" to describe

Plaintiff's work history (R. 126, 129).  The ALJ also reviewed Plaintiff's work record with the Plaintiff during the hearing (R. 108-09).  The ALJ was under no obligation to expressly discuss Plaintiff's work history in the written decision.  *See Dyer*, 395 F.3d at 1210 (noting that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").

For all of these reasons, the Court finds no error in the ALJ's credibility analysis.  *See Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) (finding that "although the ALJ did not expressly discuss Plaintiff's work history in assessing her statements regarding her symptoms, it is clear the ALJ reviewed and considered statements regarding her prior work record"); *Neff v. Saul*, No. 18-cv-3040-T-SPF, 2020 WL 1181952, at *5 (M.D. Fla. Mar. 12, 2020) (finding that "although the ALJ did not specifically discuss Plaintiff's work history in his credibility analysis, the ALJ clearly considered Plaintiff's strong work history at other steps of the sequential evaluation proceedings.").

### D.    Separation of Powers

Finally, Plaintiff argues this case must be reversed because the hierarchical structure of the SSA violates the separation of powers doctrine.  Specifically, in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), the Supreme Court found that the hierarchical structure of the Consumer Fraud and Protection Bureau ("CFPB") violated the separation of powers doctrine because the relevant statutes allowed for the head of the agency to serve for a term *longer* than the President who appointed the agency head, with the possibility of removal only for cause.  Plaintiff correctly points out that the structure of the SSA – and specifically the agency-head removal provision set forth in 42 U.S.C. § 902(a)(3) – mirrors the structure of the CFPB (DE 28-2 at 19).  According to Plaintiff, this defective hierarchical structure renders the adjudication of her disability claim unconstitutional, thus requiring reversal.

The Court disagrees. In *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), the Supreme Court reviewed a similar challenge to the leadership structure of the Federal Housing Finance Agency ("FHFA"). Like the CFPB, the FHFA allowed for the head of the agency to serve for a term longer than the appointing President, and it prohibited removal of the agency head except for cause. *Id.* at 1782 (citing 12 U.S.C. § 4512(b)(2)). Although the Supreme Court found the removal provision unconstitutional, the Court emphasized that "the unlawfulness of [a] removal provision … does not strip [an official] of the power to undertake the other responsibilities of his office." *Id.* at 1788 n.23. The Court explained that, even where a removal provision violates the separation of powers doctrine, a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm." *Id.* at 1789.

The same logic applies to the SSA removal provision at issue here, i.e. 42 U.S.C. § 902(a)(3). Although the Eleventh Circuit has not addressed the constitutionality of this provision, "multiple courts reviewing denials of applications for Social Security Benefits in the wake of *Seila Law* and *Collins* have similarly concluded plaintiffs must establish the removal provision of 42 U.S.C. § 902(a)(3) caused some compensable harm to warrant remand." *Dixon v. Kijakazi*, No. 20-82316, 2022 WL 2908497, at *12 (S.D. Fla. May 26, 2022), *R. & R. adopted*, 2022 WL 2904549 (S.D. Fla. July 22, 2022) (collecting cases); *see also Rapak v. Kijakazi*, No. 21-14473-Civ, 2022 WL 17144457, at *8 (S.D. Fla. Nov. 22, 2022) (finding "no compensable harm stemming from the removal provision").

Here, consistent with the above authorities, the Court finds that Plaintiff has failed to demonstrate any compensable harm arising from the unconstitutional removal provision at issue. Plaintiff has not shown, for example, that "absent the alleged unconstitutional provision, [Plaintiff's] claim would have been decided differently at either the ALJ or the Appeals Council

level." *See Herring v. Comm'r of Soc. Sec.*, No. 21-cv-322, 2022 WL 2128801, at *5 (M.D. Fla. June 14, 2022). Plaintiff's failure "to demonstrate that the removal provision had any actual or possible impact on the unfavorable decision [s]he received" renders her request for relief on this ground unavailing. *Tucker v. Kijakazi*, No. 21-60943-Civ, 2022 WL 750559, at *13 (S.D. Fla. Feb. 8, 2022), *R. & R. adopted*, 2022 WL 742744 (S.D. Fla. Mar. 11, 2022). For all of these reasons, the Court finds no error.

## IV.    Recommendation & Notice of Right to Object

For the reasons stated above, it is **RECOMMENDED** that:

1.    The Commissioner's final decision be **AFFIRMED**;
2.    Plaintiff's Motion for Summary Judgment (DE 28) be **DENIED**; and
3.    The Commissioner's Motion for Summary Judgment (DE 31) be **GRANTED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**SUBMITTED AND RECOMMENDED** in Chambers at West Palm Beach in the Southern District of Florida, this 17th day of May 2023.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE